**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MARK LOFTON**, individually and on behalf of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>**EYM PIZZA OF ILLINOIS, LLC** and **EDUARDO DIAZ,**<br><br>Defendants. | Case No. 18-cv-05743<br><br>Honorable Mary M. Rowland |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR RULE 23 CLASS CERTIFICATION**

NOW COME the Defendants, EYM PIZZA OF ILLINOIS, LLC ("EYM") and EDUARDO DIAZ ("Diaz") (collectively, "Defendants"), by and through their attorneys, O'HAGAN MEYER, LLC, and in response and opposition to Plaintiff's Motion for Rule 23 Class Certification, state as follows:

**INTRODUCTION**

After this case has proceeded as a conditionally certified FLSA collective action for almost four years, Plaintiff now requests that this Court radically expand the existing FLSA collective action into a Rule 23 class action based on Illinois state law. Plaintiff's main argument in support of class certification is that because Defendants' co-counsel argued in favor of the consolidation of separate individual AAA arbitrations filed by EYM pizza delivery drivers, Defendants have effectively consented to class certification in this federal action. Plaintiff is mistaken. The consolidation of individual arbitrations for the purpose of cost savings and unified discovery in arbitration could not be more different than class certification under Rule 23 of the federal rules of civil procedure. There are true efficiencies to combining ten individual arbitrations involving similar issues for purposes of discovery, but the plaintiff's burden in seeking class certification

1

under Rule 23 is far more onerous.

Plaintiff's attempt to certify a Rule 23 class is contrary to law, practically unworkable and must fail in its entirety. Plaintiff Lofton's employment was unlike the other members of the purported collective and class, and his motion to certify a class action must fail because he is an inadequate class representative. Moreover, the necessary commonality of claims, legal or factual to support a class action is lacking. For the same reasons, the Court should decertify the collective action that it conditionally certified in October 2019 (Dkt. 43). *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013) (treating the FLSA "collective" and the Rule 23 class as a single class and applying Rule 23's standards in evaluating a motion to decertify both claims); *Dailey v. Groupon, Inc.*, No. 11 C 05685, 2014 WL 4379232, at *4 (N.D. Ill. Aug. 27, 2014).

Here, Lofton's claims, and those of the other putative Rule 23 class members, are highly distinct and individualized. The class members delivered pizzas from EYM's stores throughout the State of Illinois, which included rural downstate towns, locations in suburban Chicago, and locations in the City of Chicago. As such, different minimum wages apply, and the putative class further drove vastly different mileages, in different cars, in different locations – thus making their expense reimbursement amounts under the Motus program used by Defendant EYM to calculate such reimbursements, very different (given that the Motus system calculates tailored reimbursement rates for employees based on many different location and vehicle-specific factors). When not making deliveries, these employees also worked in the restaurant at different hourly rates, and without mileage reimbursements.

In addition to the individualized nature of any claims of the putative class, plaintiffs do not identify a feasible way of addressing the individual plaintiffs' damages claims via a Rule 23 class. Calculating damages would require hundreds or thousands of separate evidentiary hearings, with such individualized inquiries "required because the employees varied in how much they worked

2

and how they recorded their time," or in this case, because the employees varied in how much mileage they drove for EYM, and where, and in what type of car – all factors that impact the amount of reimbursement owed to that employee; accordingly, class treatment is not appropriate. *Espenscheid,* 705 F.3d at 772 (7th Cir. 2013)(noting that, in that case, "it's not as if each [employee] worked from 8 a.m. to 5 p.m. and was forbidden to take a lunch break and so worked a 45–hour week but was paid no overtime," in which case "each [employee's] damages could be computed effortlessly, mechanically, from the number of days he worked each week and his hourly wage"). As noted in *Espenscheid*, when such a formulaic calculation of damages was not possible, thousands of "separate hearings loomed," and class treatment was therefore not appropriate. *Id.* at 775.

Similarly, in light of the opt-in plaintiffs' failure to adduce evidence during discovery that they are "similarly situated," decertification of the conditionally certified collective is also appropriate and warranted. When considering a motion for decertification after the conclusion of discovery (as here), courts engage in the more "stringent" second-stage inquiry. *Haugen v. Roundy's Illinois, LLC*, 552 F. Supp. 3d 806, 808 (N.D. Ill. 2021)(cleaned up). At this stage, the Court must consider the following factors: "(1) whether the plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns." *Id.* "Plaintiffs bear the burden of demonstrating that they are 'similarly situated.' " *Id.* Although the class members "need not hold identical positions, the similarities necessary to maintain a collective action under § 216(b) must extend beyond the mere facts of job duties and pay provisions and encompass the defenses to some extent." *Roberson v. Restaurant Delivery Developers, LLC*, 320 F. Supp. 3d 1309, 1315 (M.D. Fla. 2018) (decertifying a conditionally certified FLSA collective action involving delivery drivers). Here, the collective (which currently consists of only seventy (70) members, given that the claims of sixty-six other opt-ins were compelled to arbitration by this Court)

(Dkt. 120) does not pass this stringent second-stage inquiry, given the highly disparate "factual and employment settings" already discussed.

In short, the expense reimbursement claims that are the subject of this action are highly individualized claims that are not susceptible to class treatment under Rule 23, and which should be decertified as an FLSA collective. Plaintiff's Motion for Class Certification should be denied, and the conditionally certified collective action that this Court allowed in October 2019 under the very lenient step-one standard should be decertified.

## LEGAL STANDARD

Class certification is not automatic; a class may be certified only "if the trial court is satisfied, after a rigorous analysis, that the prerequisites for class certification have been met." *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015) (citing *Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*, 704 F.3d 489, 498 (7th Cir. 2013)). A plaintiff seeking certification has the burden of demonstrating that the class and proposed class representative meet various prerequisites, which include the four prongs of Fed. R. Civ. P. 23(a) and one option under 23(b). *See* Fed. R. Civ. P. 23(a-b); *Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir. 1984). Fed. R. Civ. P. 23(a) provides that a class may be certified only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(b)(3). The Rule 23(b) provision which applies to classes seeking monetary damages, requires a finding that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other

4

available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).
The Rules list four items relevant to a determination of whether predominance and superiority
under Rule 23(b)(3) exist:

> (A) the class members' interests in individually controlling the prosecution or
> defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun
> by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in
> the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Plaintiff alone has the burden of proving by a preponderance of the evidence that the
proposed classes and the proposed class representative meet the requirements of Fed. R. Civ. P.
23(a) and (b). *Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*, 29 F.4th 839, 843 (7th Cir. 2022).
When deciding a motion for class certification, a court may not "simply assume the truth of the
matters as asserted by the plaintiff," but must receive and examine evidence to resolve material
factual disputes. *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 811 (7th Cir. 2012).
"Failure to meet any of [Rule 23's] requirements precludes class certification." *Orr v. Schicker*,
953 F.3d 490, 497 (7th Cir. 2020) (quoting *Arreola v. Gondinez*, 546 F.3d 788, 794 (7th Cir.
2008)). While the court typically need not delve into the merits of the case at the class certification
stage, where Rule 23's criteria and merit concerns overlap, "the judge must make a preliminary
inquiry into the merits." *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001).

## **ARGUMENT**

## I. PLAINTIFF'S PROPOSED CLASS FAILS TO SATISFY MULTIPLE REQUIREMENTS OF FED. R. CIV. P. 23 AND CANNOT BE CERTIFIED.

As an initial matter, Plaintiff's proposed IMWL Rule 23 class of "[a]ll current and former
delivery drivers who work or worked at any of Defendants' Pizza Hut Pizza stores from August 22,

2015 to the point of judgment" is facially invalid, as the proposed class definition does not even purport to limit itself to drivers in Illinois (who are of course the only drivers to whom the Illinois Minimum Wage Law could ever be applied). Beyond this glaring shortcoming, Plaintiff's proposed class also flunks each and every criterion under Rule 23. As such, class certification is not warranted, and Plaintiff's Motion should be denied.

### A. Plaintiff Cannot Establish Commonality Because Plaintiff's "Common Question" Cannot Generate a "Common Answer."

Fed. R. Civ. P. 23's commonality requirement requires plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). For commonality to exist, "Plaintiffs' claims 'must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Orr v. Schicker,* 953 F.3d 490, 499 (7th Cir. 2020) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). The Seventh Circuit has noted that "[t]he key to commonality is 'not the raising of common questions, but rather, the capacity of a class-wide proceeding to generate common answers apt to ***drive the resolution of the litigation***.'" *Id.* (emphasis added). "[T]he commonality standard requires that plaintiffs do more than 'merely' demonstrate 'that they have all suffered a violation of the same provision of law[]' . . . Plaintiff must show that 'the class members have suffered the same injury.'" *Schilling v. PGA Inc.*, 293 F. Supp. 3d 832, 837 (W.D. Wis. 2018). Commonality does not exist where "the answers to [the common] questions are likely to vary significantly among class members given [the] issues require individualized factual inquiries into the circumstances of each class member." *Torres v. Nutrisystem, Inc*., 289 F.R.D. 587, 592 (C.D. Cal. 2013).

In analyzing a plaintiff's factual and employment settings for purposes of commonality (and, by extension, for purposes of considering decertification of a conditionally certified collective), courts in this district consider whether plaintiffs "are subject to varying work conditions in different

work locations or under different supervisors," and whether implementation of a policy was not uniform as to all plaintiffs. *Camilotes v. Resurrection Health Care Corp.*, 286 F.R.D. 339, 346 (N.D. Ill. 2012); *see also Armstrong v. Wheels Assured Delivery Systems, Inc.*, 15-cv-354, 2016 WL 1270208 at *6 (Mar. 31, 2016) (noting that "while [plaintiff] argues that all the Drivers perform 'basically the same type of work, i.e. deliveries, this characterization fails to take into consideration the relevant and significant differences among the drivers with regard to, *inter alia*, their routes, their hours, [and] their mileage").

Similar to the facts in the *Camilotes* case, the employment practices to which the majority of the employees here were subject to differed significantly from Plaintiff Lofton, and all require an individualized assessment not amenable to class certification.[1] Indeed, contrary to Plaintiff's mistaken representation in his Motion, no court in this District has certified a similar Rule 23 FLSA class of pizza delivery drivers. While Plaintiff claims that the court in *Young v. Rolling in the Dough, Inc.*, No. 17-cv-7825, 2020 U.S. Dist. LEXIS 35941 (N.D. Ill. Feb. 26, 2020) "grant[ed] Rule 23 class certification for 995 pizza delivery drivers," the *Young* court actually certified a *settlement* class, not a litigated class. *Young* does not support Plaintiff's request for certification of this litigated, highly individualized class.

---

[1] Other federal courts have refused to certify Rule 23 classes in similar cases involving the FLSA and pizza delivery drivers. In *Frazier v. PJ Iowa, L.C.*, 337 F. Supp. 3d 848 (S.D. Iowa 2018), the court considered essentially the same request for Rule 23 class certification. The defendant in that case operated twenty-six pizza franchises, and employed the plaintiffs as hourly tipped delivery drivers. As in this case, the defendant paid the plaintiffs under an FLSA-authorized "tip credit" system, where the defendant applied a tip credit against the minimum wage to calculate the plaintiffs' hourly base wages, and provided the FLSA-required notices to the plaintiffs. The plaintiffs made three class-based claims against the defendants: two claims under the FLSA and state minimum wage laws alleging the defendant improperly applied a tip credit to the delivery drivers' wages, and a claim under the FLSA that the defendant's vehicle reimbursement policy resulted in net wages below the minimum wage. *Id.* at 859. The *Frazier* court denied the plaintiffs' Rule 23 motion to certify a class of pizza delivery drivers employed by the defendant, finding the plaintiffs failed to demonstrate commonality or typicality. *Id.* at 869-73. *See also Wilson v. Wings Over Happy Valley MDF, LLC*, No. 4:17-915, 2020 WL 869889 (M.D. Penn. Feb. 21, 2020) (denying Rule 23 class certification for "claims stem[ming] from Plaintiffs' allegation that Defendants operated an illegal tip pool for delivery drivers at Defendants' restaurant," since the Plaintiffs had failed to show either commonality or predominance).

Here, a review of even the small subset of opt-in plaintiffs who served as discovery plaintiffs in this case and responded to discovery, reveals the extreme differences and variation between their factual circumstances. Plaintiff Lofton was employed by EYM as a delivery driver from April 2017 until June 2019. (SOF[2] at 2; Lofton Interrogatory Responses (Exhibit 2 to SOF) at ¶ 3). While employed at EYM, Lofton was paid an average wage of $11.02 per hour. (SOF at 3; EYM Data (August 10, 2021) (Exhibit 3 to SOF)). Lofton's wage average reflects different wage rates paid while working in the restaurant versus while making deliveries. (SOF at 4; Deposition Transcript of Mark Lofton ("Lofton Tr.") (Exhibit 4 to SOF) at 15:13-23). While employed as a delivery driver for EYM, Lofton initially drove a 1996 Buick Park Avenue, and later drove a 1999 Lincoln Mark VIII. (SOF at 8; Lofton Tr. (Exhibit 4 to SOF) at 29:1-22).

Discovery plaintiff Christopher Campbell was employed by EYM as a delivery driver from September 2018 until May 2021. (SOF at 9; Campbell Interrogatory Responses (Exhibit 6 to SOF) at ¶ 3). While employed at EYM, Campbell was paid an average wage of $9.91/hour in 2018, $10.32/hour in 2019, $12.56/hour in 2020, and $14.44/hour in 2021. (SOF at 10; EYM Data (August 10, 2021) (Exhibit 3 to SOF)). For his mileage reimbursements, Campbell was reimbursed .33/mile in 2019, .35/mile in 2020, and .36/mile in 2021. (SOF at 11; EYM Data (August 10, 2021) (Exhibit 3 to SOF)). While employed as a delivery driver for EYM, Campbell drove a 1996 Ford Fiesta. (SOF at 15; Campbell Tr. (Exhibit 7 to SOF) at 33:2-12).

Discovery plaintiff Antonio Dean was employed by EYM as a delivery driver from February 2018 until July 2019. (SOF at 16; Dean Interrogatory Responses (Exhibit 9 to SOF) at ¶ 3). While employed at EYM, Dean was paid an average wage of $11.25/hour in 2018 and $12.26/hour in 2019. (SOF at 17; EYM Data (August 10, 2021) (Exhibit 3 to SOF)). While employed as a delivery driver

---

[2] The citations herein to "SOF" refers to Defendants' previously filed Statement of Facts in support of Defendants' Motion for Summary Judgment. (Dkt. 142-2; 142-3).

for EYM, Dean drove a 2007 Dodge Charger. (SOF at 21; Dean Tr. (Exhibit 10 to SOF) at 22:13-16).

Further preventing any class treatment in this case is the individualized manner in which each putative class member's expense reimbursements were calculated and paid. The exact mileage incurred for each delivery was tracked by Google Maps and verified by each delivery driver at the end of their shift. (SOF at 23; Krumwiede Tr. (Exhibit 1 to SOF) at 58:8-60:2; Campbell Tr. (Exhibit 7 to SOF) at 13:12-14:4). The amount of the per-mile reimbursement was and is based on calculations supplied by Motus LLC, which is the industry-standard national vendor of fixed and variable rate reimbursement programs for employers. (SOF at 24; Krumwiede Tr. (Exhibit 1 to SOF) at 25:9-11; 26:22-29:22; Michael Damasiewicz Expert Report ("Damasiewicz Report") (Exhibit 12 to SOF) at p. 10-14). Motus's calculations are based on the precise make and model of the specific employee's vehicle used for deliveries, as well as the location/zip code where the vehicle is driven. (SOF at 25-26; Deposition Transcript of Michael Damasiewicz ("Damasiewicz Tr.") (Exhibit 13 to SOF) at 70:3-72:2; Damasiewicz Report (Exhibit 12 to SOF) at p. 10-14; Subpoena Response of Motus LLC (Exhibit 14 to SOF) and referenced *Vehicle Reimbursement for Delivery Drivers* (Exhibit 15 to SOF), which describes "Motus's methodology for estimating the cost of owning and operating a vehicle.") From that, Motus calculates the reimbursement rate based on fixed costs such as location-specific insurance rates, government taxes and fees, and vehicle depreciation, as well as variable costs such as maintenance and repairs, fuel (based on the cost at the employee's location) and miles per gallon (based on city or highway driving). (SOF at 27; Damasiewicz Tr. (Exhibit 13 to SOF) at 70:3-72:2; Damasiewicz Report. (Exhibit 12 to SOF) at p. 10-14; Subpoena Response of Motus LLC (Exhibit 14 to SOF; Exhibit 15 to SOF)).

At the end of the day, Plaintiff has failed to identify a common question capable of generating an answer that would "drive the resolution of the litigation." In light of the substantive requirements

9

of the IMWL, as well as the wide- ranging types of claims, conditions of employment and experiences of the various employees, for which liability may depend, resolution of the claims presented by Lofton and sought to be imposed on a class of employees who already decided not to opt into the existing collective action under Federal law cannot be decided from one—or even a small number—of inquiries. Common issues of law and fact do not exist in such a way that Plaintiff's claims under Illinois state law are capable of determination on a class-wide basis. Accordingly, Plaintiff's Motion for Class Certification must be denied.

**B.** ***Plaintiff Lofton's Claims are Not Typical of the Classes He Seeks to Represent.***

Rule 23 further requires a plaintiff to demonstrate that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). It is well-settled that a class representative "must be part of the class and 'possess the same interest and suffer the same injury' as the class members [he seeks to represent]." *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (citing *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)). A class representative's claims must have "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011). In the absence of this congruence between the named representative and the class, the trial becomes completely unmanageable and the interests of the class cannot be fairly represented by an individual with far different claims – in other words, the entire purpose of class treatment is undermined.

Here, again, Plaintiff Lofton has not presented evidence that his purported IMWL claims as a Chicago-based delivery driver, with specific expense reimbursements made to him based on: (1) the specific car that he drove to make deliveries, (2) the geographic location where he made the deliveries, and (3) a myriad of other factors considered by Motus when it generated the precise

10

reimbursement rate applicable to Lofton (*see, e.g.,* Damasiewicz Report, Exhibit 12 to SOF at p. 10-14) are in any way congruent with the unnamed members of the putative class. Class certification should be denied on this basis as well.

## II.   PLAINTIFF FAILS TO SATISFY BOTH PRONGS OF FED. R. CIV. P. 23(B)(3).

### A.   *No Common Questions of Law or Fact Predominate Over the Class Claims.*

In addition to the requirements set forth in Fed. R. Civ. P. 23(a), Plaintiff must prove the proposed Classes meet the predominance and superiority requirements of Fed. R. Civ. P. 23(b)(3). Four items are relevant to a determination of predominance and superiority:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

As part of the four considerations of Fed. R. Civ. P. 23(b)(3), a plaintiff seeking to certify a class through Fed. R. Civ. P. 23(b) must show that "questions of law or fact common to class members predominate over any questions affecting only individual members[.]" Fed. R. Civ. P. 23(b)(3). "Rule 23(b)(3)'s predominance requirement is satisfied when 'common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication.'" *Messner v. Northshore University HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (citing 7AA Wright & Miller Federal Practice & Procedure § 1778 (3d ed. 2011)). Common questions are those where "the same evidence will suffice for each member to make a prima facie showing[.]" *Id.* at 815. Conversely, individual issues are those which require the various members of a class "to present evidence that varies from member to member[.]" *Id.*

Courts, including those in the Seventh Circuit, hold that the "[m]ere assertion by class counsel that common issues predominate is not enough." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014). Plaintiff, however, does just this in his Brief, by asserting that "Plaintiff proposes to answer common questions through class-wide expert vehicle costing testimony, which has been recognized in similar claims." (Mot. at 4). Plaintiff also asserts that "the discovery required to find liability and calculate damages is not complicated," as "Defendants have admitted that all they have to do to acquire data related to mileage and rates of reimbursement for their drivers is to request them from Motus." (Mot. at 14). But no such data is attached to the Motion, and fact discovery is closed. More to the point, Plaintiff does not articulate how any possible "common questions" about vehicle reimbursement could "drive resolution of all claims asserted" about alleged failure to pay minimum wage, which is the ultimate issue that is before this Court in this FLSA and IMWL action. Indeed, "what matters at this stage [when the Court is considering class certification and decertification of the collective] is the nature of the factual inquiry" ultimately required for liability under the FLSA and IMWL – "whether the [employer's] policy was applied in such a manner that it actually resulted in unpaid work." *Creal v. Group O, Inc.*, 155 F. Supp. 3d 831, 838 (N.D. Ill. 2016). Each of the two cases Plaintiff cites as support for these "possible common questions" is distinguishable, because in each case the plaintiffs (unlike Plaintiff Lofton, who was paid at least the minimum wage) claimed to have been paid less than the minimum wage. *Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2019 WL 5725043 at *1 (S.D. Ohio Nov. 5, 2019); *Perrin v. Papa John's Int'l, Inc.*, No. 4:09-cv-1335, 2014 WL 4749547 at *1 (E.D. Mo. Sept. 24, 2014).

Although courts typically do not need to examine the merits of a case at the class certification stage, where the requirements of Rule 23 become intertwined with the merits of a case "the judge must make a preliminary inquiry into the merits." *Szabo v. Bridgeport Machines, Inc.*,

249 F.3d 672, 676 (7th Cir. 2001). "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Messner*, 669 F.3d at 815 (7th Cir. 2012) (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)). As noted above, Plaintiff and the other class members would need to present different evidence: some class members apparently plan to present evidence suggesting that they were paid less than the Illinois minimum wage (Defendants deny any class member was paid less than the Illinois minimum wage), while Plaintiff himself was demonstrably paid the applicable minimum wage.

### B. A Class Action is not a Superior Means of Adjudicating the Claims Presented by Plaintiff.

In addition to the four considerations of Fed. R. Civ. P. 23(b)(3), when evaluating superiority, the court must consider whether "a class action is the best method of achieving a 'fair and efficient adjudication of the controversy.'" *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 186 (3d Cir. 2001). "If the class certification only serves to give rise to hundreds or thousands of individual proceedings requiring individually tailored remedies, it is hard to see how . . . a class action would be the superior means to adjudicate the claims." *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 577 (7th Cir. 2008).

1.  Plaintiff Does Not Satisfy His Burden to Demonstrate Adjudication of Rule 23 Class is Manageable.

In order for claims to be adjudicated on a classwide basis, a Plaintiff must demonstrate that adjudication on a classwide basis is manageable for the Court. *See* Fed. R. Civ. P. 23(b)(3)(D). As discussed above, individual proceedings are necessary here to allow a factfinder to make liability and damage determinations with respect to each member of the Rule 23 Classes. The existence of these individualized factual issues does not, contrary to Plaintiff's empty assertions,

promote an "efficient, fair and manageable way of litigating the class's claims (Mot. at 15), but instead presents case manageability issues that are not susceptible of resolution.

Plaintiff's counsel offers no proposed solutions to these manageability issues. To aid the court in its determination of manageability, many courts encourage the plaintiff to propose a trial plan concurrently with plaintiff's motion for Rule 23 certification (or in response to a motion to decertify a conditionally certified collective action) to demonstrate to the court that adjudication of the proposed issues is manageable as a class action. *See Camilotes*, 286 F.R.D. at 354, Courts have consistently required plaintiffs to prove manageability of Rule 23 classes or risk denial of certification or class decertification. *See, e.g., Espenscheid v. DirectSat USA, LLC*, No. 09-cv-625, 2011 WL 2009967 at *8 (W.D. Wis. May 23, 2011) (decertifying FLSA collective and Rule 23 class actions, citing plaintiff's inability to propose manageable trial plan); *affirmed*, 705 F.3d 770, 775-76 (7th Cir. 2013) (Posner, J.) (noting it was "reasonable" for the trial judge to expect "plaintiffs' lawyer to propose a specific plan for litigating the case within the framework [the trial judge] had established," and holding that "[I]f class counsel is incapable of proposing a feasible litigation plan though asked to do so, the judge's duty is at an end.").

Here, Plaintiff did not include a proposed trial plan along with his Motion for Certification, nor has Plaintiff proposed how this Court will manage resolving the individualized liability and factual determinations for the Illinois state law based Rule 23 class. Looking to the definitions of the proposed Classes as well as the Plaintiff's legal theories and the requirements of the Illinois Minimum Wage Law at issue, it is clear that the instant case presents substantial manageability issues. Because Plaintiff provided no guidance or a workable trial plan indicating how these issues would be manageably adjudicated, the Court should decline to certify Plaintiff's proposed Rule 23 Class.

2.  It Is Not Desirable To Concentrate The Litigation In This Forum.

While separate from a Rule 23 Class Certification analysis, a supplemental jurisdiction analysis under 28 U.S.C. § 1367(c) provides further argument as to why the state law class claims at issue should not proceed in this forum. At the moment, this Court's jurisdiction over Plaintiff's state law claims is premised on federal causes of action—the FLSA claims alleged by Plaintiff. The United States Supreme Court has described supplemental jurisdiction as "a doctrine of discretion, not of plaintiff's right." *International College of Surgeons*, 522 U.S. 156, 172 (1997). 28 U.S.C. § 1367(c) directs that a court may decline to exercise supplemental jurisdiction over state law claims where:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). District courts have inherent authority to manage complex litigation and to determine "whether to exercise supplemental jurisdiction over pendant claims and parties." *Id.* at 308. "[T]he question [of] whether to retain or relinquish supplemental jurisdiction over state law claims remains open 'at every stage of the litigation.'" *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 173 (1997)).

Here, Plaintiff alleged both FLSA collective and state law class claims in his initial and first amended complaints, which justified only the Court's ***initial*** exercise of jurisdiction over the state law class claims. The number of potential state law class members now greatly exceeds the size of the collective. There are only 70 current opt-ins and 1,075 potential members of the class, thus,

15

the state law claims quickly would predominate over the current FLSA collective. Moreover, each of those remaining potential class members has already declined to participate in this lawsuit and there is no reason to bring them into a case they want no part of, especially when it will needlessly complicate the case.

The considerations set forth in 28 U.S.C. § 1376(c) demonstrate why it is not desirable for this Court, or any federal court, to adjudicate the state law claims at issue. First, the state law claims at issue raise novel issues of state law in light of the fact that the issue of whether Defendant's expense reimbursement program violated the IMWL. Second, the time, effort, and resources required to adjudicate the state law claims would vastly outweigh the time, effort, and resources required to adjudicate Plaintiff's federal cause of action such that the state-law causes of action would substantially predominate over the federal causes. Moreover, the alleged damages do not actually exist or are de minimus[2].

Courts in this District have declined to expand an FLSA action into a class action under similar circumstances, noting that "given the very small size of the FLSA opt-in collective, certification of an opt-out class for a supplemental state claim would not be justified. Were this court "to certify a class action for [plaintiff's] supplemental state claims based on the same facts and issues underlying [plaintiff's] federal claim, we could very well be left 'with the rather incongruous situation of an FLSA 'class' including only a tiny number of employees ... with a state-law class that nonetheless includes all or nearly all of the companies' present or former employees.'" *McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574, 577 (N.D. Ill. 2004) (quoting *Muecke v. A-Reliable Auto Parts & Wreckers, Inc.*, No. 01 C 2361, 2002 WL 1359411, at *2 (N.D. Ill. June 21, 2002)).[3]

_____

[3] Other federal courts in the Seventh Circuit have declined to exercise supplemental jurisdiction over state law class claims under circumstances which are almost identical to this case. For example, in *Wicke v. L & C Insulation, Inc.*, No. 12-cv-638-wmc, 2013 WL 5276112 (W.D. Wis. Sept. 18, 2013), the Court declined to exercise supplemental jurisdiction over a plaintiff's state law class claims, citing substantial predominance concerns, where the plaintiff

The Court is faced with a very likely and very substantial expenditure of effort, time, and resources that vastly exceeds the effort, time, and resources needed to adjudicate the individual FLSA causes of action. Thus, many factors which weigh against the Court's exercise of supplemental jurisdiction over the state law class claim also weighs against a finding that this forum is the appropriate forum to adjudicate the claims of the putative Rule 23 state law class.

3.  Demonstrable Lack of Interest in the Litigation Indicates Resolution as Class Action Not Superior Method of Adjudication.

The manageability issues that are present in the instant case are further compounded by the demonstrable lack of interest in the litigation from putative Class members—especially in light of the fact that Class member participation is ***necessary*** for resolution of damages issues. This leads to additional problems given the nature of Rule 23 Classes as "opt-out" classes. The Seventh Circuit has recognized that "potential members of a Rule 23(b)(3) class . . . will automatically be included in the class if they do not speak up." *Ervin v. OS Restaurant Serv., Inc*., 632 F.3d 971, 976 (7th Cir. 2011). Here, individualized testimony is needed to prove both liability and damages. Given the small size of the opt-in class in this case, the record strongly suggests that there is low engagement among putative Class members. Thus, it is highly unlikely that the Court will be able

---

alleged both FLSA collective and Rule 23 class claims in his complaint, but later dropped the collective action in favor of pursuing individual FLSA claims. *Wicke*, 2013 WL 5276112, at *1. Ultimately, the Court found that it would be unwise for the Court to exercise supplemental jurisdiction over the plaintiff's state law class claims because the individual FLSA claims would "necessarily interject[] the class certification process and all the complexity that adjudicating a class action entails." *Id.* This Court further noted that the substantial effort required to adjudicate the class claims presented another "compelling reason[] for declining jurisdiction." *Id.*

*In Kneipp v. Re-Vi Design, LLC.*, No. 17- cv-857, 2019 WL 1244903 (W.D. Wis. Mar. 18, 2019), the plaintiff initially alleged both FLSA collective and state law Rule 23 class claims, but was unsuccessful in obtaining any additional opt-in plaintiffs during the notice period, effectively ending his FLSA collective action. *Id.* at *1. The defendant challenged the district court's exercise of supplemental jurisdiction over plaintiff's state law class claims in light of plaintiff's failed collective action. *Id.* The Court found that the disproportionate and extensive time and resources which would be required of the Court to adjudicate the state law class claims justified dismissing the claims from the case, concluding that the two to four weeks required to complete the damages "mini trials" would be "a huge commitment of this court's resources . . . [and] weighs heavily in favor of finding substantial predominance under § 1367(c)(2)." *Id.*

to easily obtain the member-by-member testimony needed to establish liability and damages from all members that fail to "opt-out" of the class action litigation.

This Court is faced with a situation analogous to other such situations where courts have declined to impose a class action upon those employees who chose not to opt-in to this case. Those courts have recognized that if they were "to certify a class action for [plaintiff's] supplemental state claims based on the same facts and issues underlying [plaintiff's] federal claim, we could very well be left 'with the rather incongruous situation of an FLSA 'class' including only a tiny number of employees . . . with a state-law class that nonetheless includes all or nearly all of the companies' present or former employees.'" *McClain*, 222 F.R.D. at 577 (cleaned up).

## CONCLUSION

For the foregoing reasons, Plaintiff Lofton has failed to satisfy his burden to demonstrate that Class certification of his Illinois state law claim is warranted under Fed. R. Civ. P. 23. Defendants respectfully request this Court deny Plaintiff's Motion for Certification and allow the case to proceed to adjudicate the individual claims of Plaintiff Lofton, and that the Court decertify the conditionally certified collective. Defendants further request such other and further relief as the Court deems just and proper.

Dated: August 18, 2023

Respectfully submitted,

EYM PIZZA OF ILLINOIS, LLC and EDUARDO DIAZ

By:/s/ Matthew E. Szwajkowski
One of their attorneys
O'HAGAN MEYER LLC

18

Kristine S. Phillips
Matthew E. Szwajkowski
O'HAGAN MEYER LLC
One E. Wacker Dr., Suite 3400
Chicago, Illinois 60601
Telephone: 312.422.6100
Facsimile: 312.422.6110
kphillips@ohaganmeyer.com
mszwajkowski@ohaganmeyer.com