## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MARK LOFTON, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 18-cv-5743 |
| v. | Judge Mary M. Rowland |
| EYM PIZZA OF ILLINOIS, LLC and EDUARDO DIAZ, | |
| Defendants. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Mark Lofton ("Lofton"), a former delivery driver for one of Defendant EYM's Pizza Hut ("EYM Pizza") stores in Illinois, filed this action against EMY Pizza and its owner Eduardo Diaz ("Diaz"), (collectively "Defendants"), as a collective action[1] under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* and as a putative class action under the Illinois Minimum Wage Law, 820 ILCS § 1051 *et seq.* Lofton claims that he and other similarly situated current and former delivery drivers were illegally denied lawful minimum wage rates because they were not properly reimbursed for all required expenditures. Before the Court is Defendants' motion for summary judgment and Plaintiff's motion to strike Michael Damasiewicz as an

---

[1] The Court conditionally certified a collective action of current and former delivery drivers under 29 U.S.C. 216(b) [43]. The previous class representative, Linda Colon, was compelled to arbitrate. [120]. Lofton, who was previously serving as an opt-in, agreed to serve as class representative and replaced Colon in the First Amended Complaint. [124].

expert. For the reasons stated below, Defendants' motion for summary judgment [143] is denied. Plaintiff's motion to strike [142] is denied without prejudice to be raised later.

## I.   Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 250 (internal quotations omitted).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotations omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016)

2

(internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

## II.    Background[2]

Defendant EYM is a franchisee of several Pizza Hut restaurants in Illinois. [143-2] ¶ 1. Plaintiff Lofton was employed by EYM as a delivery driver from April 2017 until June 2019. *Id.* ¶ 2. While employed at EYM, Lofton was paid an average wage of $11.02 per hour. *Id.* ¶ 3. Lofton's wage average reflects different wage rates paid while working in the restaurant versus while making deliveries. *Id.* ¶ 4. The parties dispute whether Lofton was paid as little as $6.00 per hour while making deliveries. [154-4]; [161-1] ¶ 1. Discovery Plaintiffs Christopher Cambell and Antonio Dean were also employed by EYM as delivery drivers. [143-2] ¶¶ 9, 16. Campbell was employed from September 2018 until May 2021, and was paid an average wage of $9.91 per hour in 2018, $10.32 per hour in 2019, $12.56 per hour in 2020, and $14.44 per hour in 2021. *Id.* ¶¶ 9–10. For his mileage reimbursements, Campbell was reimbursed $0.33 per mile in 2019, $0.35 per mile in 2020, and $0.36 per mile in 2021.

---

[2] This Court takes these facts from the Defendants' Statement of Facts [143-2], Plaintiff's Response to Defendants' Statement of Facts [154-2], Plaintiff's Statement of Additional Facts ("SOAF") [154-3], Defendants' Response to Plaintiff's SOAF [161-1], and various exhibits the parties have submitted in connection with Defendants' motion for summary judgment. Where appropriate, the Court notes what evidence it relies upon in making its decision and ignores evidence that does not comport with the requirements of the Local Rules.

*Id.* ¶ 11. Dean was employed from February 2018 until July 2019, was paid an average wage of $11.25 per hour in 2018 and $12.26 per hour in 2019. *Id.* ¶¶ 16–17. The parties dispute whether Cambell and Dean were paid as little as $4.20 and $8.00 per hour while making deliveries, respectively. [161-1] ¶¶ 4, 7.

Lofton, Campbell, and Dean (collectively "Plaintiffs"), as well as other delivery drivers, were required by Defendants to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering pizza. *Id.* ¶¶ 2, 5, 8. To comply with Defendants' vehicle requirements, Plaintiffs and other delivery drivers incurred vehicle-related expenses, which included expenses such as gasoline, oil and other fluids, vehicle parts, auto repair and maintenance, registration costs, licensing, taxes, depreciation, and auto insurance. *Id.* ¶¶ 3, 6, 9.[3] Because they used a personally owned vehicle to make food deliveries to customers, Plaintiffs were paid a per-mile reimbursement, in addition to their hourly wage. [142-2] ¶ 22. The exact mileage incurred for each delivery was tracked by Google Maps and the amount of the per-mile reimbursement was based on calculations supplied by Motus LLC ("Motus"). *Id.* ¶¶ 23–24.

---

[3] Plaintiffs' interrogatory responses state that they "do[] not remember" their "gasoline, vehicle parts and fluids, repair and maintenance services, insurance, depreciation and other expenses" incurred while employed by EYM. [143-2] ¶¶ 5, 12, 18. Additionally, Plaintiffs testified that they do not remember their actual vehicle expenses incurred while employed by EYM and did not produce any documents evidencing payments made for gas, repairs, or any other expenses or costs that they incurred in connection with their vehicles while employed by EYM. *Id.* ¶¶ 6–7, 13–14, 19–20. It is undisputed that Defendants do not track nor require their delivery drivers to report or submit vehicle-related expenses during their employment. [153-4] ¶ 15.

4

### III.    Analysis

The preliminary issue in this case is what standard applies for calculating reimbursements of vehicle expenses.

Plaintiff brings his claims under 29 C.F.R. § 531.35, which provides that "the wage requirements of the [FLSA] will not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee." 29 C.F.R. § 531.35. Thus, a kickback occurs when the cost of tools that are specifically required for the performance of the employee's particular work "cuts into the minimum or overtime wages required to be paid him under the Act." *Id.* "In the pizza delivery context, the cost associated with delivering food for an employer is a 'kickback' to the employer that must be fully reimbursed, lest a minimum wage violation be triggered." *Hatmaker v. PJ Ohio, LLC*, No. 3:17-CV-146, 2019 WL 5725043, at *2 (S.D. Ohio Nov. 5, 2019) (citing cases).

### A.    Reimbursement Rate

Defendants argue that the standard is whether the reimbursement "reasonably approximates" the delivery-related expenses based on the "plain language of the relevant regulations." [143-1] at 10–11. Alternatively, Defendants argue that they may use the "reasonable approximate" standard based on a 2020 Opinion Letter issued by the Wage and Hour Division of the DOL. [17] at 12–13. Plaintiff responds that the reimbursement rate should be IRS standard business

5

mileage rate ("IRS rate") based on the DOL's Field Operations Handbook ("FOH" or "Handbook").

The Court begins by examining the text of the regulation and applying the standard canons of construction. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019). If the regulation's meaning is plain, "the court must give it effect, as the court would any law." *Id.* If the regulation is genuinely ambiguous, the Court must defer to the agency's reasonable interpretation of its own regulations. *Id.*

The text of the regulation at issue—Section 531.35 ("anti-kickback regulation") —provides that:

> Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash. For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act. See also in this connection, § 531.32(c).

29 C.F.R § 531.35. The last sentence of the anti-kickback regulation cross-references Section 531.32, which is titled "Other facilities" and mentions reimbursements like meals, hotels, and other lodging. 29 C.F.R § 531.32. After discussing items that are not considered "facilities," such as safety caps and explosives, Section 531.32 provides that "[f]or a discussion of reimbursement for expenses such as 'supper money,' 'travel

expenses,' etc., see § 778.217 of this chapter." *Id.* Therefore, Section 531.32 cross-references Section 778, which is titled "Overtime Compensation" and subsection 217 is titled "Reimbursement for expenses." Section 778.217 provides that "the *actual or reasonably approximate* amount expended by an employee, who is traveling 'over the road' on his employer's business, for transportation (whether by private car or common carrier) and living expenses away from home, other travel expenses, such as taxicab fares, incurred while traveling on the employer's business." 29 C.F.R. § 778.217 (emphasis added).

Defendants contend that the anti-kickback regulation is not "genuinely ambiguous" because it cross-references Section 778.217 governing "expense reimbursement," which in turn cross-references—or as Defendants assert "implements"—the "reasonably approximate" standard in Section 778.217. [143-1] at 10. The Court disagrees. First, there is no express language tying these the three subsections together. Thus, "it would strain logic to say the imprecise 'see also' language in Section 531.35 is a clear directive that the proper way to calculate reimbursements to avoid 'kickbacks' is found in the referenced section of another referenced section (i.e. two sections later)." *Edwards v. PJ Ops Idaho, LLC*, No. 1:17-CV-00283-DCN, 2023 WL 4868304, at *4 (D. Idaho July 31, 2023). Additionally, it is unclear if Section 778.217 applies in this context because it addresses *overtime calculations*—not minimum wage—that are excluded as part of the employee's regular rate. Finally, Section 778.217's language addresses "travelling over the road" and "living expenses away from home," which courts have interpreted differently in

7

the food delivery driver context. *Id.* (collecting cases). Overall, given the lack of connection between the three regulations and focus on overtime compensation, the Court finds that the regulation is genuinely ambiguous.

Because the Court finds that the regulation is genuinely ambiguous, the Court may defer to the agency's interpretations to resolve the ambiguity, so long as it is reasonable. *See Kisor*, 139 S. Ct. at 2422. In determining whether an agency's interpretation is entitled to deference, the Court should consider (1) whether the interpretation is the agency's "authoritative" or "official position," (2) whether the interpretation implicates the agency's "substantive expertise," and (3) whether the interpretation reflects the agency's "fair and considered judgment" and is not just a "convenient litigating position." *Id.* at 2415–17.

The parties advocate for two separate agency interpretations: Plaintiff points to the DOL's FOH and Defendants highlight the 2020 Opinion Letter. The DOL's FOH states:

> In some cases it is necessary to determine the costs involved when employees use their cars on their employer's business in order to determine minimum wage compliance. For example, car expenses are frequently an issue for delivery drivers employed by pizza or other carry-out type restaurants.
>
> (a) As an enforcement policy, the IRS standard business mileage rate found in IRS Publication 917, "Business Use of a Car" ***may be used (in lieu of actual costs and associated recordkeeping)*** to determine or evaluate the employer's wage payment practices for FLSA purposes.

U.S. Dep't of Labor, Field Operations Handbook 30c15 (2016), https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/FOH_Ch30.pdf (emphasis

8

added). More recently, the Wage and Hour Division of the DOL issued an Opinion Letter on August 31, 2020 that concluded the "regulations permit reimbursement of a reasonable approximation of actual expenses incurred by employees for the benefit of the employer by any appropriate methodology; the IRS business standard mileage rate is not legally mandated by [the] regulations *but is presumptively reasonable*." U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (Aug. 31, 2020), 2020 WL 5296626 (emphasis added).

Plaintiff argues that the FOH provides employers with two options: (1) keep records of delivery drivers' actual expenses and reimburse for them, or (2) reimburse delivery drivers at the IRS rate. [154-1] at 13. Because Defendants did not keep records of drivers' actual expenses, Plaintiff asserts the IRS rate is the only option. *Id.* at 14. Defendants respond that a "mandatory imposition" of the IRS rate is inconsistent with the language of the FOH. [143-1] at 12. The Court agrees with Defendants on this point. The FOH uses the word "may," which avails Defendants to alternate options. *Edwards*, 2023 WL 4868304, at *8 (D. Idaho July 31, 2023) (citing Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts § 11, at 112 (2012) (explaining that "may" is "permissive" and grants discretion)). While Defendants could have used the IRS rate, which is *per se* reasonable, they chose not to. The Court concurs with the reasoning in *Edwards*—both the FOH and 2020 Opinion Letter constitute relevant agency guidance and are reasonable interpretations that are not in tension with one another:

9

> The FOH states that the IRS rate "may" be used. The Opinion Letter likewise states the FOH's instruction that the IRS rate "may" be used is discretionary but "does not foreclose other methods, such as a reasonable approximation of expenses." These two documents are not in conflict with one another. In fact, they lead to the same conclusion: there are more than two methods employers may use when determining the appropriate rate of reimbursement under the FLSA if they did not track employees' actual expenses. One method is the IRS rate. Another method is a reasonable approximation rate.

*Edwards*, 2023 WL 4868304, at *8–9. In sum, this Court holds that to comply with the minimum wage regulations in the pizza delivery driver context, employers have three options (1) reimburse drivers at the IRS standard business mileage rate; (2) keep records of delivery drivers' actual expenses and reimburse for them; or (3) reasonably approximate.

## B.  Reasonable Approximation

Defendants next contend they are also entitled to summary judgment because they reasonably approximated their delivery drivers' expenses. Defendants' expert argues that Motus "provides tailored, employee-specific reimbursements rates based on the size and age of the employee's vehicle, which are updated monthly to reflect variances in fuel and other costs." [161] at 5. Plaintiff's expert responds that the reimbursement rate was not a reasonable approximation because, among other things, the calculations were "restricted to a multi-year range," "general type of vehicle (compact, midsize, and full-size)," and "fail[ed] to adequately reimburse fixed vehicle costs, such as insurance, registration fees, and depreciation." [154-1] at 9. Overall, the parties vigorously dispute the methodology used by Motus and whether Defendants' reasonably approximated vehicle-costs. [154-2] ¶¶ 25–28; [161-1] ¶¶ 10,

10

12–14, 16, 18. In sum, there are material factual disputes on whether Defendants' reimbursement rate reasonably approximated Plaintiff's vehicle expenses that preclude summary judgment. *See Perrin v. Papa John's Int'l, Inc.*, 114 F. Supp. 3d 707, 722 (E.D. Mo. 2015) (denying summary judgment and "leav[ing] to the jury the determination of whether Defendants' reimbursement rate reasonably approximated Plaintiffs' vehicle expenses").

### C. Burden of Proof

Lastly, Defendants argue they are also entitled to summary judgment because Plaintiffs provided no evidence that the "cost" of their specific vehicle related expenses exceeded the amount that EYM paid in mileage reimbursement. [143-1] at 15–16. More specifically, Defendants argue that Plaintiffs did not provide specific evidence of costs involving gasoline and oil, routine maintenance and repairs, insurance, government taxes and fees relating to the owning and operating of a vehicle, and depreciation. *Id.* The Court disagrees with Defendants proposed interpretation of Plaintiffs' burden in this case.

Employees who bring an FLSA action have "the burden of proving that [they] performed work for which he was not properly compensated." *Melton v. Tippecanoe Cnty.*, 838 F.3d 814, 818 (7th Cir. 2016) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946)). At the same time, the FLSA requires that employers have the duty to maintain employment and payment records. 29 U.S.C. § 211(c). In *Anderson*, the Supreme Court observed that the employer is in the best position to "produce the most probative facts concerning the nature and amount of work

11

performed." 328 U.S. at 687. However, "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises." *Id.* Therefore, the Court established a burden-shifting test in those situations, where the employee "'has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Melton*, 838 F.3d at 818 (quoting *Anderson*, 328 U.S. at 687). "At that point, '[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.'" *Melton*, 838 F.3d at 818 (quoting *Anderson*, 328 U.S. at 687).

The Seventh Circuit has applied this FLSA burden-shifting framework in cases involving overtime wages. *Melton*, 838 F.3d 814 at 816. The Court finds that the FLSA burden-shifting framework is also appropriate in this context. *See Anderson*, 328 U.S. at 687 (highlighting the "remedial nature of [the FLSA] and the great public policy which it embodies" that "militate against making that burden an impossible hurdle for the employee."). It is undisputed that Defendants do not track nor require their delivery drivers to report or submit vehicle-related expenses during their employment. [153-4] ¶ 15. Plaintiffs have "the burden of proving that [they] performed work for which [they were] not properly compensated." *Melton*, 838 F.3d at 818 (quoting *Anderson*, 328 U.S. at 686–87). Here, Defendants made a *choice* to "reasonably approximate," and their records are "inadequate" because they do not

account for actual costs. Consequentially, "Plaintiffs can provide approximations of their expenses as a method of comparison, including the IRS rate or other calculations, which would lead to a reasonable inference that the drivers were undercompensated for labor." *Rodriguez v. GC Pizza LLC*, No. 4:20-CV-3106, 2022 WL 4368353, at *8 (D. Neb. Sept. 21, 2022). Afterwards, "the burden will shift to the defendant to rebut the inference proffered by the plaintiffs." *Id.* As mentioned, the Court finds that there is a material dispute of fact on whether the reimbursement rate was reasonable.

Thus, Defendants' motion for summary judgment is denied. Because the issue of the reimbursement rate will be determined at trial, the Court denies Plaintiff's motion to strike Defendants' expert [142] without prejudice to be raised at a later date.

## IV.    Conclusion

For the reasons explained above, Defendants' motion for summary judgment [143] is denied. Plaintiff's motion to strike [142] is denied without prejudice to be raised at a later date.

E N T E R :

Dated: March 26, 2024

_____
MARY M. ROWLAND
United States District Judge

13